# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4613-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.M.,

     Defendant-Appellant,

and

B.T., SR.,[1]

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF B.T., JR.,

     a Minor.

_____

Submitted May 1, 2019 – Decided May 16, 2019

_____

[1] Defendant B.T., Sr. was dismissed from the litigation on May 10, 2017 because he died.

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0069-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Christine O. Saginor, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Kosha Gala, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant A.M. appeals from a May 14, 2018 order terminating her parental rights to her son, B.T., Jr. (Brandon), born in 2017.[2] Defendant argues the family part judge erred in terminating her parental rights because the Division of Child Protection and Permanency (Division) failed to satisfy the four prongs under N.J.S.A. 30:4C-15.1(a). We affirm.

We summarize the evidence relevant to the judge's order terminating defendant's parental rights. Immediately after his birth, hospital staff contacted

---

[2] We use initials and pseudonyms to protect the parties' privacy interests. R. 1:38-3(e).

the Division because Brandon was addicted to methadone and suffering withdrawal symptoms. The hospital staff observed defendant fall asleep several times while she was caring for Brandon. The Division removed Brandon following his discharge from the hospital and placed him with resource parents.[3] Defendant's parental rights to her two older children, K.J. and N.H, were previously terminated. Defendant's three children live together with the same resource parents.

Defendant has a long-standing history of substance abuse, which was a significant factor in terminating her rights to the older children, K.J. and N.H. See N.J. Div. of Child Prot. & Permanency v. A.M., No. A-2449-16 (App. Div. Jan. 2, 2018). Similar to the facts in this matter, N.H. was removed by the Division because she had methadone in her system at birth and was treated for withdrawal.

Not only did defendant suffer from drug addition, she also had severe psychological and emotional issues. The Division has attempted to provide essential services to defendant since 2014 in connection with her older children, and more recently regarding her ability to parent Brandon. However, defendant failed to complete the recommended substance abuse treatment programs and

---

[3] Brandon remains with the same resource parents.

A-4613-17T3

other therapeutic programs made available to her by the Division, including anger management and parenting classes.

Defendant relapsed several times, abusing both drugs and alcohol. She also failed to provide urine drug screens and hair follicle samples. Similar to her behavior regarding her two older children, defendant demonstrated a pattern of missing parenting time visits with Brandon and failing to attend court-ordered bonding and psychological evaluations. Defendant offered multiple excuses for her failure to attend treatment and other programs, undergo drug testing, maintain parenting time visits with Brandon, and appear for evaluations.

A guardianship trial was conducted on March 6 and May 14, 2018. The Division's expert, Dr. Alan Lee, and the Division's case worker, Rasheeda Brown, testified on March 6. Defendant testified on May 14. During the trial, the judge noted defendant appeared "either asleep or sluggish . . . ."

In the bonding evaluation between Brandon and his resource parents, Dr. Lee found Brandon was forming and solidifying a "significant and positive psychological bond" with both resource parents and would be at risk of suffering "severe and enduring psychological or emotional harm" if he was separated from them.

4

Regarding defendant's psychological evaluation, Dr. Lee explained defendant failed to show up for the first appointment. When the evaluation was rescheduled, Dr. Lee observed defendant "repeatedly fall asleep, nod off," and fail to respond to questions for as long as twenty to thirty seconds. Dr. Lee gave defendant several breaks during the evaluation, hoping she would be able to complete the session. After returning from one such recess, defendant said she was unable to continue the evaluation.

The Division case worker, Brown, testified extensively to defendant's drug use and her failure to complete hair follicle testing and undergo multiple urine screens. Brown also testified regarding the services the Division provided to defendant, stating she was offered psychological and psychiatric evaluations, substance abuse treatments and evaluations, visitation, and family team meetings, and received bus passes and tickets from the Division to attend these services. According to Brown, defendant missed most of her appointments for services as well as her scheduled visits with Brandon.

At the conclusion of the testimony, the judge rendered an oral decision, finding by clear and convincing evidence the Division established all four prongs of the statutory best interests test.

A-4613-17T3

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child . . . ;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

Based on the evidence and testimony, the judge terminated defendant's parental rights to Brandon and entered a judgment of guardianship.

Regarding the first prong, the judge concluded significant harm could come to Brandon if he were to be separated from his resource parents, including the failure to achieve certain milestones and develop emotional and behavioral problems. Based on the credible testimony of the Division's expert, the judge found Brandon was comfortable with his resource parents and they were attentive to his needs. He also noted Brown's testimony that defendant failed to take advantage of services the Division provided and was a "no show on many occasions . . . ." The judge held the Division established Brandon's "safety,

6

health and development [have] been and will continue to [be] endangered by the parental relationship with [defendant]. She's just, unfortunately, incapable of looking out for [Brandon's] best interests . . . ."

On the second prong, the judge found defendant was unable or unwilling to eliminate the harm to Brandon. He noted the same concerns with defendant's inability to parent her two older children remained ongoing issues with respect to her ability to parent Brandon. He also found defendant was unable to provide a safe and stable home for Brandon and was unable or unwilling to complete the many services offered to her by the Division.

In reviewing the third prong, the judge found the Division considered the available alternatives to termination and found none were viable. He stated the Division considered other relatives or caregivers but they were ruled out for various reasons. The court had previously relieved the Division of the obligation to make reasonable efforts toward reunification due to the involuntary termination of the defendant's parental rights to her two older children. N.J.S.A. 30:4C-11.3(c); N.J.S.A. 30:4C-15.1(d).

On the fourth prong, the judge found the Division established termination of defendant's parental rights would not do more harm than good to Brandon. The judge explained it was not in Brandon's best interests to allow defendant to

7

maintain her parental rights because Brandon would suffer "some serious repercussions and difficulties" in defendant's custody. Moreover, the judge determined defendant was unable to meet Brandon's needs.

On appeal, defendant argues the judge erred in terminating her parental rights because the Division failed to meet its burden under N.J.S.A. 30:4C-15.1(a).

Our review of a judge's decision to terminate parental rights is limited. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278 (2007). We defer to the family court's findings, "recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin–Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Findings by a family court are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 283 (quoting Cesare, 154 N.J. at 413). "Indeed, we defer to family part judges 'unless they are so wide of the mark that our intervention is required to avert an injustice.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (quoting N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427 (2012)). "Additionally, as a general rule, we must grant deference to the trial court's credibility determinations." M.M., 189 N.J. at 279.

After reviewing the record, we conclude that the judge's factual findings are supported by the record and, in light of those facts, his legal conclusions are sound. We add only the following comments.

A court may not solely rely on a parent's drug use during pregnancy to constitute harm. N.J. Dep't of Children & Families, v. A.L., 213 N.J. 1, 23 (2013). Although a finding of harm cannot be based solely on "a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program[,]" N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 168 (2014), a court may consider that "[p]arents who use illegal drugs when caring for an infant expose that baby to many dangers due to their impaired judgment." N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385 (App. Div. 2014).

Here, defendant admitted during trial that her use of methadone would prohibit her from adequately caring for Brandon. In addition, defendant acknowledged she failed to complete any of the treatment programs in which she was enrolled. Under these circumstances, termination of defendant's parental rights to Brandon was warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4613-17T3